# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

**v.**                                              Case No. 24-539-DHU

**LABAR TSETHLIKAI,**

Defendant**.**

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR INFORMATIONAL OUTLINE OF ALLEGED AGGRAVATING FACTORS

The United States of America respectfully submits this response in opposition to the Defendant's *Motion for an Informational Outline of Alleged Aggravating Factors*. Doc. 87.

The Defendant moves the Court to order the Government to provide a "written informative outline of the facts and evidence supporting the aggravating factors alleged in the death penalty notice." *Id*. at 16. He seeks advanced notice of the theories and facts the Government intends to prove at a capital-sentencing phase to establish each of the seven aggravating factors discussed in the Government's notice. *Id*. at 11-16. He argues that he is currently "blind" as to what acts, harms, and facts the Government intends to prove, *id*. at 5, rendering himself unable to "defend himself against the allegation in the death penalty notice." *Id*. at 11.

As set forth below, the Defendant is not legally entitled to the informational outline he requests. Further, through the *Second Superseding Indictment* [Doc. 52], *Notice of Intent to Seek the Death Penalty* [Doc. 75], and voluminous discovery, the Government has provided adequate notice of all aggravating factors it will present at trial. Accordingly, this Court should deny the defendant's motion.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

The Defendant is charged via a second superseding indictment [Doc. 52] with a string of murders, kidnappings, robberies, sexual assaults, and physical assaults, in both Indian Country and the Albuquerque Metropolitan Area, all of which span from October 2022 to April 2024. The *Second Superseding Indictment* describes eleven different victims, all of whom were indigent and each being abducted, stripped naked, sexually assaulted, robbed, abandoned, and, in some instances, murdered.

In total, the *Second Superseding Indictment* charges seventeen counts, including a capital-eligible offense of kidnapping resulting in death.[1] [Doc. 52; Count 1]. That charge is not predicated upon Indian Country jurisdiction, consequently the "opt out" provision set forth in 18 U.S.C. § 3598 is inapplicable. In compliance with the requirements of *Ring v. Arizona*, 536 U.S. 584 (2002), and its progeny, the grand jury also made several special findings that, if proven at trial, would render the Defendant eligible for capital sentencing. Specifically, the grand jury alleged for Count 1 that each of the four statutory gateway intent factors listed in 18 U.S.C. § 3591(a)(2)(A)-(D), as well as the statutory aggravating factors of causing the death during the commission, attempted commission, and immediate flight from the commission of a kidnapping offense, were present. 18 U.S.C. § 3592(c)(1). Additionally, the grand jury found that the Defendant (1) has previously been convicted for two or more Federal or state offenses punishable by more than one year, committed on different occasions, involving the infliction of serious bodily injury or death upon another person, 18 U.S.C. § 3592(c)(4); (2) committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious

---

[1] The other charged offenses include two counts of first degree murder (Counts 2 and 3), kidnapping resulting in death (Count 4), kidnapping (Counts 5, 6, 9, 11, 13, 14, 15, and 16), assault with intent to commit murder (Count 7), assault resulting in serious bodily injury (Count 8), aggravated sexual abuse (Count 10), assault with a dangerous weapon (Count 12).

physical abuse to John Doe 1, 18 U.S.C. § 3592(c)(6); (3) committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value, 18 U.S.C. § 3592(c)(8); (4) committed the offense after substantial planning and premeditation, 18 U.S.C. § 3592(c)(9); and (5) committed the offense against a particularly vulnerable victim, 18 U.S.C. § 3592(c)(11).

As of April 18, 2025, the United States has provided voluminous discovery to the Defendant that amounts to over 11,000 pages. The discovery includes an index of materials produced, which includes law enforcement reports, witness statements, forensic test results, GPS location information, and related materials.

On January 12, 2024, the Government filed its statutorily required *Notice of Intent to Seek the Death Penalty*. Doc. 75. In the *Notice of Intent*, the Government repeated the eligibility factors listed as Special Findings in the indictment and averred as to the capital count the non-statutory aggravating factors that the Defendant engaged in a pattern of predatory and sexual violence against other individuals, including John Does 2 through 11, as alleged in Counts 2 through 17 of the Second Superseding Indictment, as well as other uncharged John Does. Each of the aggravating factors is factually related to the incidents that gave rise to the offenses charged in the indictment.

II.    **LAW AND ARGUMENT**

   **A. The Court Should Deny the Defendant's Motion Because the Defendant is not Entitled to an Informational Outline**

The Defendant seeks detailed advance notice of the theories and facts the Government intends to introduce at a potential penalty phase of trial, asserting that he is currently "blind" to such information. The law, however, does not require the Government to identify the evidence it

will present in aggravation. Neither the plain language of the Federal Death Penalty Act (the "FDPA"), 18 U.S.C. §§ 3591-98, nor the Constitution support the Defendant's broad, overreaching request. For this reason, the case law, including reasoned opinions of multiple Courts of Appeals and numerous district courts, undermines the Defendant's request.

>    **A.    The Court Should Deny the Defendant's Motion because the United States is not Required to Provide Evidentiary Detail of Aggravating Factors.**

The FDPA requires the Government, at "a reasonable time before trial," to provide "a notice stating that the Government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified . . . and the Government will seek the sentence of death." 18 U.S.C. § 3593(a)(1). Additionally, the statute requires the notice to "set[] forth the aggravating factor or factors that the Government, if the defendant is convicted, proposes to prove as justifying a sentence of death." 18 U.S.C. § 3593(a)(2). The statute, however, does not require the Government to reveal its evidence in support of these factors. See, e.g., *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003) ("The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor . . . not notice of the specific evidence that will be used to support it."); *United States v. Taylor*, 316 F. Supp.2d 730, 741 (N.D. Ind. 2004) ("[The] Notice of Intent informs the Defendant that the Government intends to seek the death penalty and lists the aggravating factors that the Government will seek to prove.  The statute requires no more.").

The FDPA notice provisions comply with constitutional standards. The Defendant is entitled to notice of the charges against him, *Stirone v. United States*, 361 U.S. 212, 217 (1960), but there is no extant constitutional right to advance notice of the evidence that the Government intends to use to prove such charges, even in a capital sentencing hearing. See *Gray v. Netherland*, 518 U.S. 152, 166-70 (1996). In *Gray*, the petitioner claimed he was deprived of

adequate notice because he did not know about some of the witnesses who would testify against him until the evening before his capital sentencing hearing. *Id*. at 167. In rejecting the petitioner's claim, the Supreme Court summarized the existing precedent regarding a defendant's right to notice, concluding that, "[t]o put it mildly, these cases do not compel a court to order the prosecutor to disclose his evidence; their import, in fact is strongly against the validity of petitioner's claim." *Id*. at 168; see also *Wardius v. Oregon*, 412 U.S. 470, 474 (1973) ("[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded.").

Applying these standards, every United States Court of Appeals addressing this issue has held that identification of the aggravating factors, as outlined by the Government in a notice of intent to seek the death penalty, is the only notice to which a defendant is entitled. See, e.g., *United States v. LeCroy*, 441 F.3d 914, 929-30 (11th Cir. 2006); *Higgs*, 353 F.3d at 325; *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001). In *LeCroy*, the Government alleged future dangerousness as an aggravating factor and listed in its notice of intent to seek the death penalty multiple categories of evidence that would support its aggravating factor. *See* 441 F.3d at 929. At trial, the Government then presented penalty phase evidence relating to prior crimes and bad acts committed by the defendant, a category of evidence it had not listed in its notice of intent. *Id*. On appeal, the Eleventh Circuit held that the Government satisfied its constitutional and statutory obligations by informing the defendant of what aggravating factors it intended to prove at trial, and further held that the Government was not obligated to outline specific pieces of evidence it planned to use to support the aggravating factors. *Id*. at 930; *see also United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999) (holding that the Government did not err in making last-minute

changes to evidence listed in its notice of intent to seek the death penalty because the Government is not required to provide specific evidence in the notice of intent).

Furthermore, in *Higgs*, the defendant and an accomplice kidnapped three women and killed them in a national park outside of Washington, D.C. *See* 353 F.3d at 290. While Higgs' federal murder case was pending, he was also charged in the District of Columbia Superior Court in connection with a nightclub shooting. *Id*. At Higgs' murder trial, federal prosecutors presented evidence of Higgs' intimidation of a witness to the D.C. shooting to support a non-statutory aggravating factor of obstruction of justice. *Id*. at 325. Higgs argued on appeal that the district court abused its discretion in admitting the testimony because he did not receive pretrial notice that the Government intended to introduce evidence concerning the witness or the nightclub shooting. *Id*. The Fourth Circuit held that Higgs' claim was "plainly without merit," explaining that the "FDPA and Constitution require that the defendant receive adequate notice of the aggravating factor, which Higgs admittedly received in this case, not notice of the specific evidence that will be used to support it." *Id*.

Finally, in *Lee*, the district court granted post-trial relief to the defendant because, among other things, the court had permitted the Government to elicit testimony from a defense mental health expert regarding unnoticed prior bad acts that the jury ultimately used to support a finding of future dangerousness. *See* 274 F.3d at 490-91, 495. The district court held this was unfair to Lee because he had no advance notice of the evidence. See *id*. at 495. The Eighth Circuit, however, reversed, holding that "although Lee had a right to advance notice of the aggravating factors the Government sought to prove at sentencing, Lee had no right to advance notice of the specific evidence the Government would use to provide those factors." *Id*. (citing *Gray*, 518 U.S. at 167-68).

Numerous federal courts, citing the above authorities, have held that the Government is not legally required to preview or reveal the specific proof it will offer in support of aggravating factors. See, e.g., *United States v. Burkhalter*, Case No. 18-cr-36, 2021 WL 3519281, *1 (W.D. Mo. Aug. 10, 2021) (Contrary to what both defendants Nesbitt and Burkhalter argue, the FDPA does not require the Government to provide advance notice of facts and evidence it will use to establish aggravating factors. Rather, the purpose of a notice of intent to seek the death penalty is to provide the defendant with sufficient notice of aggravating factors to enable the defense to respond and prepare the defendant's case in rebuttal."); *United States v. George*, Case No. 17-cr-201, 2020 WL 2812864, *3-*4 (E.D. La. May 29, 2020) (holding "the notices of intent against the capital defendants comply with statutory and constitutional requirements, which do not obligate advance notice of the Government's penalty phase evidence"); *United States v. Candelario-Santana*, 368 F. Supp.3d 316, 325 (D.P.R. 2019) ("The FDPA requires the United States to provide notice of its intent to seek the death penalty but not its evidence in support of the factors requested."); *United States v. Briseno*, Case No. 11-cr-77, 2014 WL 12682281, *2-*3 (N.D. Ind. Nov. 14, 2014) (holding that neither the Constitution nor the FDPA required the Government "to preview its evidentiary support for the aggravating factors it has disclosed"); *United States v. Montgomery*, 10 F. Supp.3d 801, 82223 (W.D. Tenn. 2014) (denying motion for informational outline of statutory aggravating factors and stating "Supreme Court precedent does not compel a court to order the prosecutor to disclose his evidence") (internal quotation omitted); *United States v. Mayhew*, 380 F. Supp.2d 936, 947 (S.D. Ohio 2005) (holding the Government's argument that "it is not required to give notice of the specific evidence it will present in support of aggravating factors" was "well-taken"); *United States v. Cisneros*, 363 F. Supp.2d 827, 837 (E.D. Va. 2005) ("The Government is not required to spell out the evidence it intends to use

during sentencing."); *United States v. Minerd*, 176 F. Supp.2d 424, 449-50 (W.D. Pa. 2001) (holding notice of intent fully complied with the statutory scheme "in that it identifies the aggravating factors the Government intends to prove if the defendant is convicted and the case enters the penalty phase.").

Here, the Government has satisfied its constitutional and statutory obligations by informing the Defendant through its *Notice of Intent* which aggravating factors it intends to prove at trial. *See* Doc. 75. The law requires nothing more, particularly when, as here, the information in the *Second Superseding Indictment*, *Notice of Intent*, and discovery combine to provide the Defendant with a full picture of the Government's theory of the case and likely penalty phase evidence.

**B.    The Court Should Deny the Defendant's Motion because the Defendant's Cited Precedent is Contradicted by Numerous other Federal Capital Cases**

Acknowledging that the FDPA "does not specify the kind or extent of the notice required" in connection with aggravating factors, the Defendant turns to the bill of particulars provision in Fed.R.Crim.Pro 7(f) to support his argument for an informational outline. Doc. 87 at 7. That rule, however, offers him no support.

Some courts, such as *United States v. Wilson,* 493 F. Supp.2d 364 (E.D.N.Y. 2006), have analyzed the request for a bill of particulars without discussion of whether or not it is an appropriate vehicle for the defendant's request. See, e.g., *United States v. Troya*, No. 06-80171-cr, 2008 WL 11407284 (S.D. Fl. Sept. 8, 2008); *United States v. Talik*, No. 5:06CR51, 2007 WL 4570704, *8 (N.D.W.V. Dec. 26, 2007). Most courts, however, have recognized that Rule 7(f) is not applicable to a capital penalty hearing. See *United States v. Lujan*, 530 F. Supp.2d 1224, 1243 (D.N.M. 2008) (collecting cases holding Rule 7(f) does not apply to death penalty notices); *United States v. Llera Plaza*, 179 F. Supp.2d 464, 472 (E.D. Pa. 2001) ("Rule 7 is not applicable

to [notice of intent] submitted to satisfy FDPA requirements). The United States agrees with those cases that find that Rule 7 does not apply to capital penalty hearings. See also *Candelario-Santana*, 368 F. Supp.3d at 325 (denying defense request for detailed offer of proof and a hearing to test relevance, reliability, and admissibility of Government's penalty phase evidence); *United States v. Christensen*, Case No. 17-cr-20037, Docket No. 91 at 22 (C.D. Ill. Aug. 15, 2018) ("[T]his outline is certainly beyond what is required under the FDPA as held by the Circuit Courts of Appeal."); *United States v. Briseno*, 2:11-cr-77, 2014 WL 12682281, *2 (N.D. Ind. Nov. 14, 2014) (denying motion for informational outline of future dangerousness factor, finding the Government's Notice of Intent satisfied the requirements of the FDPA and that the Government was not required to provide evidentiary preview); *United States v. Montgomery*, Case No. 2:11-cr-20044, Docket No. 368 (W.D. Tenn. Mar. 24, 2014) (denying bill of particulars in support of victim impact factor); *United States v. Solomon*, Case No. 05-cr-385, 2007 WL 9702871, *1-2 (W.D. Pa. Jun. 26, 2007) (reiterating that the indictment and NOI "sufficiently advise Defendant of the charges against which he must be prepared to defend at trial" and holding that "[i]t is apparent to the Court that Defendant is not seeking better 'notice,' but rather is seeking the discovery of evidence and the Government's legal and evidentiary theories, to which he is not entitled at this time"); *United States v. Gooch*, Case No. 04-cr-128, 2006 WL 3780781, *21 (D.D.C. Dec. 20, 2006) (finding the Government was not required to outline the factual basis underlying the mental states alleged in the NOI, concluding that the defendant was "not really asking for the underlying factual basis for each gateway factor—he already has all the facts—but, instead, for how the  plans to use the evidence it has amassed" and that "[t]he  has no obligation to give him a preview of its evidentiary presentation") (emphasis in original); *Taylor*, 316 F. Supp.2d at 741 (holding notice of specific statutory and non-statutory aggravating factors

on which the Government would rely was all that was required); *United States v. Nguyen*, 928 F. Supp. 1525, 1552 (D. Kan. 1996) (rejecting defendant's argument that he was entitled to "full evidentiary detail" because indictment and NOI effectively apprised him of the charges that he must be prepared to meet).

Although there is a split of authority as to whether the Court can or should require production of an informational outline, *Christensen* is instructive. There, the court surveyed cases on both sides of the issue and concluded:

> The court acknowledges that the cases discussed above are not binding, but rather merely persuasive, and that there is no binding precedent on this specific issue from the Seventh Circuit. However, the court finds important the fact that all four of the circuit court decisions on this issue come down on the side of not requiring the Government to provide an informational outline detailing the specific evidence it intends to present in support of the aggravating factors. Rather, all the circuit court decisions hold that the listing of the aggravating factors in the NOIs is enough to satisfy the requirements of the Constitution and the statutory requirements of the FDPA. The court finds the circuit court decisions in *Battle*, *Lee*, *Higgs*, and *LeCroy* to be more persuasive than those district court cases cited by the Defendant. The circuit court cases present a more reasoned analysis of the requirements of the FDPA and the Constitution. Therefore, the Government is not required to preview its evidentiary support for the aggravating factors it has disclosed by providing a detailed outline for each factor. See *Briseno*, 2014 WL 12682281 at *2.

*Christensen*, Case No. 17-cr-20037, Docket No. 91 at 21. As in *Christensen*, cases cited by the defense here carry little persuasive value considering the contrary, reasoned opinions from the Courts of Appeals and the numerous district courts that have followed them. Consistent with those courts, this Court should deny the defense motion for an informational outline. The Defendant has all the notice to which he is entitled. Instead, he seeks a preview of the Government's penalty phase case-in-chief and insight into how the Government will use it, something the law does not require.

What is more, decisions ordering an informational outline, such as those cited by the defense, are largely fact-intensive and turn on the unique circumstances of each case. See, e.g.,

*Wilson*, 493 F. Supp.2d at 377 (holding that "the Death Penalty Notice must be considered in conjunction with the offenses charged in the indictment, which can provide the requisite specificity to an otherwise insufficient notice"). These cases are often legally inconsistent and factually distinguishable, including those from district courts in this circuit.

For instance, in *Wilson*, the court unequivocally acknowledged that "'[t]he Government is not required to provide specific evidence in its notice of intent.'" 493 F. Supp. 2d at 377 (quoting *Battle*, 173 F.3d at 1347). The court denied the defendant's request for a "bill of particulars" as to the aggravating factor of future dangerousness; yet, the court also granted the defendant's request for more details about the victim impact aggravator. *Id*. at 377-78.  The court provided no legal explanation for its inconsistent conclusions. Instead, it simply explained that it would "follow the trend" in other cases cited by the defendant because "the Government [] failed to provide any compelling reason for why th[e] motion should be denied." *Id*. at 378. Given the lack of reasoned legal analysis and apparent internal inconsistency, the *Wilson* case is of limited value.

### C.`    The Court Should Deny the Defendant's Motion because the Defendant's Reliance on the Court's Gatekeeping Function to Ensure Heightened Reliability is Flawed.

The Defendant's claims that an informational outline is necessary to ensure heightened reliability and to enable the Court to carry out its gatekeeping functions miss the mark. *See* Doc. 87 at 8-9. First, the FDPA's sentencing scheme, including its notice provisions, fully satisfy constitutional standards for heightened reliability in capital sentencing. *See United States v. Aquart*, 912 F.3d 1, 52 (2d Cir. 2018) (affirming constitutionality of FDPA and noting six sister circuit courts have done the same). Second, an informational outline will do little to enhance the Court's responsibility for being the gatekeeper of admissible evidence. Reliable capital sentences, under the Eighth Amendment, are those that result from a sentencing scheme that

guards against arbitrariness by streamlining discretion at the eligibility stage and then allows for the exercise of wide-ranging discretion at the selection stage. *United States v. Fields*, 483 F.3d 313, 336 (5th Cir. 2007). Furthermore, the need for greater reliability in the selection of an appropriate punishment entails not stricter evidentiary rules, but the assurance of individualized sentencing once a defendant is eligible for the death penalty. *Id*. (citing *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)).

Here, the defendant has not explained how an informational outline from the Government would facilitate the jury's determination of an appropriate punishment and assure the "individualized sentencing" that the Eighth Amendment requires. See *George*, 2020 WL 2812864 at *5 (rejecting defendant's argument that an informational outline would enable the court to "screen" the 's evidence in advance to ensure that the 's case in support of the death penalty meets the Eighth Amendment's "reliability" requirements). Accordingly, the Court should disregard the defendant's "heightened reliability" arguments.

The Defendant further asserts that an informational outline will assist the Court in deciding the admissibility of evidence. He fails, however, to demonstrate why or how an outline is necessary to assist the Court. This Court is fully capable of performing its "gatekeeping" function without an outline of the evidence supporting the aggravating factors and need not "screen" every item of evidence to perform that function. See *id*.; *Briseno*, 2014 WL 12682281 at *2 ("This rationale—that the proffer would be of help to the court—is not a reason at this point in time to order the to lay out its case, chapter and verse."); *United States v. Stone*, Case No. 12-cr-72, 2013 WL 6799119, *1 (E.D. Cal. Dec. 20, 2013) (denying defense motion to pre-screen any evidence supporting non-statutory aggravating factors, explaining the defending did not point to any authority permitting the Court to screen evidence as requested). Such pre-screening

of evidence contravenes the reasoned opinions of *Battle*, *Lee*, *Higgs*, and *LeCroy* and would impose a notice obligation on the  not found in the FDPA.

Instead, during the penalty phase, the defense may object to any evidence it deems inappropriate or may file timely motions *in limine* based on the Government's extensive discovery, and the Court may then exclude evidence if it is, among other things, irrelevant, unreliable, or its probative value is outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. *George*, 2020 WL 2812864 at *5; see also 18 U.S.C. § 3593(c). Moreover, pretrial challenges to penalty phase evidence should be limited, as "the Supreme Court has also made clear that in order to achieve . . . 'heightened reliability,' more evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors." *United States v. Fell*, 360 F.3d 135, 143 (2d Cir. 2004) (emphasis in original).

An informational outline is also not necessary for the Court to preside over pretrial litigation, and the Defendant has all he needs to support potential pretrial motions. For instance, motions challenging the constitutionality of the Government's aggravating factors (e.g., vagueness, overbreadth, etc.) can be established based on the plain language of the pleading documents and need not rely on underlying evidence. Evidentiary motions can be based upon information provided in the discovery process and counsel's experience in litigating capital cases. What is more, a pretrial motion is normally not the place to test the sufficiency of the Government's evidence with respect to aggravating factors. See *United States v. Williams*, 00-cr-1008, 2004 WL 2980027, *17 (S.D.N.Y. Dec. 22, 2004) ("Before evaluating defendants' [challenges to aggravating factors], however, it is necessary to reiterate the general proposition that a pre-trial motion such as the one under consideration here is normally not the place to test the sufficiency of the Government's evidence with respect to aggravating factors because notices

of intent generally need not list specific evidence. Thus, to the extent defendants challenge the evidentiary bases of the noticed aggravating factors, we will not entertain those challenges at this point.") (citing *Battle*, 173 F.3d at 1347; *United States v. Kee*, Case No. 98-cr-778, 2000 WL 863119, *9 (S.D.N.Y. Jun. 27, 2000); *United States. v. McVeigh*, 944 F. Supp. 1478, 1490 (D. Colo. 1996)).

Thus, the Court should deny the Defendant's motion because he fails to establish, either legally or otherwise, the necessity of an informational outline for the Court to discharge its "gatekeeping" function.

Should the Court, however, order the Government to produce an informational outline as to any specific factor, it should not order such disclosure within the 90 days demanded by the Defendant. Doc. 87 at 2. Although it does not appear to be a topic of discussion in reported opinions, informational outlines often tend to lock the prosecution into the evidence it may present during trial, limiting prosecutors from introducing evidence not specifically listed in an outline. There is no legal support for requiring the prosecution to make such evidentiary decisions without a trial date yet established, and with the Defendant strenuously objecting to the entry of a scheduling order and seeking to delay trial by up to four years. *See* Doc. 86. Doing so would prejudice the Government, potentially even depriving the jury of relevant information it should hear in this capital case. See *Gregg v. Georgia*, 428 U.S. 153, 204 (1976) ("We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision.").

### D.    Conclusion

Any suggestion from the Defendant that an informational outline is necessary to conduct pretrial litigation is disingenuous. As stated above, challenges to aggravating factors may be

raised based on the plain language of the factors. By experience, most, if not all such challenges

will closely mimic motions that have been raised (and likely rejected) in countless other courts in

countless previous capital cases. An informational outline is not needed. What is more,

evidentiary challenges can be based on the actual evidence that has been disclosed in the

discovery process. To do its job, the defense does not need an outline or summary of the

Government's evidence and the playbook of how the Government will employ its evidence. In

sum, no outline should be required in this case.

WHEREFORE, for the reasons stated above, the Court should deny the Defendant's

motion for an informational outline in its entirety.

Respectfully submitted,

RYAN ELLISON
Acting United States Attorney

 */s/ Electronically filed on September 5, 2025*
JACK E. BURKHEAD
MATTHEW J. McGINLEY
Assistant United States Attorneys

I HEREBY CERTIFY that on September 5,
2025, I electronically filed the foregoing with
the Clerk of the Court using the CM/ECF
system, which will cause a copy of this filing
to be sent to counsel for Defendant.

*/s/*
Jack E. Burkhead
Assistant United States Attorney