IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | No. CR 1:24-00539-001 DHU |
| § | |
| LABAR TSETHLIKAI, § | |
| § | |
| Defendant. § | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE (DOC. 104) TO HIS EMERGENCY MOTION TO STAY PROCEEDINGS (DOC. 101)**

Contrary to the government's arguments on pages 11-14 of its Response, the standards governing death penalty defense are far more robust than in any other type of case. *See* Doc. 101, *Emergency Motion to Stay Proceedings* at page 8, providing, "Because death is different, 'so too are the lengths to which defense counsel must go in investigating a capital case.' *Doe v. Ayers*, 782 F.3d 425, 435 (9th Cir. 2015) (citations omitted). The government's denial of this fundamental fact – and their apparent position that an ongoing, months-long lack of funding for Mr. Tsethlikai's mitigation investigation is no problem – is confounding and intolerable. The United States is trying to kill Mr. Tsethlikai. They are simultaneously asking the Court to ignore the fact that his Defense is not fully funded.

The Defense Team is responsible for providing "high quality legal representation," and not merely "an effective defense"[1] to Mr. Tsethlikai throughout the entirety of this capital prosecution. To that end, Mr. Tsethlikai's Team filed the Emergency Motion to Stay the Proceedings (Doc. 101) because the ABA Guidelines **require the defense** to alert the Court that the ongoing funding crisis has rendered the Team unable to provide the high-quality representation to which Mr. Tsethlikai is entitled, and to request that the case be paused until adequate funding has resumed for both the CJA and the Federal Defender's Office[2]. In particular, the funding crisis has impacted Learned Counsel and mitigation experts and as a result, the mitigation investigation has ground to a halt. These are centrally important – and constitutionally required – components of any death penalty defense, and they are simply not being funded.

In its Response, the government called this "defense counsel's illusory aversion to 'uncompensated' work." Doc. 104 at 9. Indeed, their Response is teeming with inaccuracies[3] and disparaging remarks about the defense team and its work on

---

[1] American Bar Association, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, History of Guideline 4.1 (Rev. Ed. 2003).

[2] The government suggests that the Defense is "posturing" by bringing this Motion. Doc 104 at p. 8. Counsel's actions are exactly what the ABA Guidelines advise in this circumstance. Those guidelines specifically state: **Counsel at all stages should demand on behalf of the client all resources necessary to provide high quality legal representation. If such resources are denied, counsel should make an adequate record to preserve the issue for further review.**
 *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, Guideline 10.4—The Defense Team (Rev. Ed. 2003).

[3] For example, the government on page 3 of their Response writes: "[D]efense counsel's position was that the case should essentially be held in abeyance under the mistaken belief that Defendant would receive an expedited no seek decision from the Attorney General". At no time did Mr. Tsethlikai believe or suggest that the case should be "held in abeyance" nor did the defense operate under a mistaken belief about an "expedited no seek". Rather, the defense sought a ***scheduling order*** to provide the defense additional time to prepare the mitigation investigation prior to a presentation before the DOJ's Capital Review Committee. (Doc. 64).

this case. Yet, the government's fifteen-page response fails to appreciate the significance of the problem and fails to explain how the lack of funding, over many months, for major parts of the defense in this capital case is consistent with Mr. Tsethlikai's Sixth Amendment right to Counsel. The hardships suffered by these essential members of the defense team, and the ways in which this ongoing lack of funding is affecting the defense, are not "speculative." To be abundantly clear and because the government falsely claims that they are the only party currently not receiving compensation:

- Despite submitting monthly invoices, Learned Counsel has received no compensation in this case since well before July 3, 2025. In addition to hourly compensation, these outstanding invoices include out-of-pocket expenses for travel to New Mexico and elsewhere (to include all hotels and rental cars). Therefore, Learned Counsel has not been compensated for her work for well over three-and-a-half months and has paid all case-related travel expenses out-of-pocket without reimbursement.
- Because of the CJA funding crisis, the defense has not paid a mitigation expert in this case since well before July 3, 2025, despite submitting monthly invoices. In addition to hourly compensation, these invoices include out-of-pocket expenses for travel to meet with Mr. Tsethlikai, his family, and other witnesses, to gather records and to complete other necessary tasks as required by the ABA Standards.[4] Therefore, no mitigation specialist has been compensated for their work for well over three-and-a-half months, and they have been paying case-related expenses out-of-pocket without reimbursement.
- As a result of the lack of pay, one essential, now-uncompensated team member has taken money from their retirement accounts to pay their own

---

[4] See Motion to Stay p. 9

basic living expenses. If that team member finds another case or work that will pay them, it will affect the amount of time and resources they can devote to Mr. Tsethlikai's case should funding resume.

- Another essential, uncompensated team member has had to focus their time on another of their cases, one that is paying them. That specialist has young children and a family to support. Under these circumstances, that specialist has had to stop most of their work on Mr. Tsethlikai's case.

- Learned Counsel and these specialists continued to work on Mr. Tsethlikai's case – without pay - as much as they could justify with the hope that they would receive back pay on October 1st as originally promised. As long as the government shutdown continues, they will not receive back pay for the many hours of work they have already performed. Nor will they be paid for any work they do going forward for the duration of the budget crisis.

- Mr. Tsethlikai's Defense Team is comprised of both CJA counsel and experts and the Federal Defender's office. CJA and the FDO are impacted differently by the budgeting issues. If Congress does not pass a budget or continuing resolution by October 17, 2025, it is counsel's understanding that federal defender employees will then stop being paid for their work. Additionally, at that point, the federal defender's office will not be able to pay experts for their work.

- To provide a concrete example of this, an expert who was preparing to engage in work on Mr. Tsethlikai's case over the next months informed Defense Counsel that they will not perform that work until the budget crisis has been resolved.[5]

- As a result of the ongoing funding crisis, the mitigation investigation has ground to a halt.

---

[5] To avoid disclosing defense strategy, Counsel will only provide the names and specialties of this expert in an *ex parte* manner if the Court believes it is necessary.

4

The government first attempts to discredit Mr. Tsethlikai's Motion because the Federal Defender's Office has not filed a similar one in any other case. This ignores the fact that Mr. Tsethlikai's Team, like many defense teams on death penalty cases but unlike almost all other cases within this Federal Defender's Office, has relied heavily on CJA funds, in addition to the FDO budget, since its inception. Defense Counsel is unaware of any other case in the FPD office that has been affected by the ongoing budget crisis in the same way as Mr. Tsethlikai's case. Indeed, it is currently the only authorized death penalty case in the district. The government shutdown, and the prospect of discontinued funding for the FDO, compounds the ongoing, months-long CJA budget crisis that has already been a strain on Mr. Tsethlikai's defense team.

The government then points to "guaranteed" backpay as if the promise of future backpay means that Mr. Tsethlikai's defense is not currently compromised by the failure to pay Learned Counsel and essential specialists for months. Doc. 104 at 9. But this is no "temporary, fleeting lapse" of funding for Mr. Tsethlikai's Team. A major part of the defense investigation cannot continue if it is not funded. Specialists who have been working on Mr. Tsethlikai's case since last year have had to stop almost all work on it in favor of compensated work. Contrary to the government's straw man arguments, Mr. Tsethlikai is not moving for a stay of the proceedings because of a brief lapse in bi-weekly paychecks to team members. *See* Doc. 104 at 9. Rather, in his Motion, and again in this Reply, Mr. Tsethlikai points specific ways the ongoing funding crisis has compromised his defense preparation,

5

chief among them the cessation of the mitigation investigation. Troublingly, the government expresses no concern about the fact that his defense currently lacks a mitigation investigation; they do not even acknowledge it.

Government counsel appears confused or uninformed about the duties of the Defense Team and the nature of a defense in a death penalty prosecution. The government appears to be under the incorrect assumption that the trial (guilt/innocence) phase and the penalty phases are wholly separate and distinct.[6] This misunderstanding must be immediately dispelled. In all death penalty cases, Counsel must exhaustively explore every aspect of the 'defendant's character ... and any of the circumstances of the offense.' *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). See also *Wiggins*, 529 U.S. at 396 (reversing based on counsel's failure to 'fulfill their obligation to conduct a thorough investigation of the defendant's background.')." This investigation into the client's life history as well as any "circumstance of the offense" applies to the entire Defense Team and must be exhausted prior to the guilt/innocence trial. ***The same jury will hear the guilt/innocence trial and any penalty phase trial.*** Therefore, the defense presentations at each phase are intertwined. Moreover, there is typically very little or no time between the guilt/innocence trial and the penalty phase trial. The defense must have its penalty phase presentation prepared well before the start of jury selection and many themes presented in the guilt/innocence trial will continue

---

[6] At the hearing on July 23, 2025, the Government echoed this misapprehension by suggesting that "the penalty phase can always be kicked further down the road, because these experts that they are talking about do not impact the actual presentation of our case against them at trial."

6

in the penalty phase trial. Moreover, the mitigation investigation is centrally important not just to the penalty phase but also to Mr. Tsethlikai's guilt or innocence. Information uncovered during the mitigation investigation can form the basis for pretrial motions and will heavily impact defense strategy during the guilt/innocence trial. It is the duty of the defense team to integrate the case for life with guilt/innocence phase strategy. Counsel has the duty, "*at every stage of the case,*" to "take advantage of all appropriate opportunities to argue why death is not suitable punishment for their particular client." American Bar Ass'n, Supplementary Guidelines for the Mitigation Function of Defense Teams in Capital Cases 10.11 A&I.[7]

    The government also chides the defense for continuing to file motions during this funding crisis. According to the government, this demonstrates that the defense is not at all impaired by the funding crises. The government's position further illustrates its willful blindness to, or at the very least, lack of appreciation for, the complex requirements of a "high quality" legal defense in a death penalty case. Attorneys are not specialists trained to conduct mitigation investigations. That is why ABA Guideline 10.4 requires "one or more mitigation specialists" as well as other non-attorney specialists and experts (See Doc. 101 at 5).

---

[7] The Judicial Conference of the United States has endorsed these guidelines in its October 2016 Model CJA Plan. *See* Guide to Judiciary Policy, Vol. 7A, Appx. 2A: Model Plan for Implementation and Administration of the Criminal Justice Act, XIV.B.9: "All attorneys appointed in federal capital cases should comply with the American Bar Association's 2003 Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (Guidelines 1.1 and 10.2 et seq.) and the 2008 Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases." *Id*. at 28 (adopted by the Judicial Conference of the United States, Oct. 3, 2016.

To suggest that addressing a compromised mitigation investigation resulting in Constitutional violations is "premature" is absurd. Doc 104 at 8. Government counsel is not "stating the obvious" but rather failing to understand it. What is obvious is that Mr. Tsethlikai's rights are presently impacted by the failure of the United States to fund his defense. Critical team members are unable to perform the duties required of them and have been hamstrung for far more than the 10 days of this current government shutdown. Government counsel is right about one thing - Mr. Tsethlikai's team is fearful. We are fearful of providing an inadequate defense and depriving a man of his Constitutional rights in a literal *life or death* situation.

**THEREFORE**, Mr. Tsethlikai respectfully renews his motion for a stay of the proceedings until funding for both the federal defender's office and the CJA have been adequately restored.

Respectfully Submitted,

**FEDERAL PUBLIC DEFENDER**
111 Lomas Blvd., NW, Suite 501
Albuquerque, NM 87102
Phone: (505) 346-2489
Email: hadley_brown@fd.org
aric_elsenheimer@fd.org

Hadley Brown
/s/*Hadley Brown*

*Electronically filed 10/10/25*
/s/*Aric G. Elsenheimer*

**LAW OFFICE OF ANDREA L. LUEM**
400 S. 4th Street Suite 500
Las Vegas, NV 89101
Phone: (702) 575-0481
Email: andrea@luemlaw.com

Andrea L. Luem
*/s/Andrea L. Luem*

9